743 So.2d 389 (1999)
Donald Wayne PEAGLER and Bonnie Peagler, Appellants,
v.
Katie Ethel MEASELLS, Appellee.
No. 98-CA-00186-COA.
Court of Appeals of Mississippi.
March 23, 1999.
Pat Donald, Morton, Attorney for Appellants.
Jerry L. Mills, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Donald Wayne Peagler and his wife, Bonnie Peagler, appeal the decision of the Scott County Chancery Court. The court found that Donald's aunt, Katie Ethel Measells, had adversely possessed a tract of land to which the Peaglers held record title. They argue that the verdict was against the overwhelming weight of the evidence, as Measells's possession of the land was permissive and not adverse. We disagree and affirm.

FACTS
¶ 2. P.M. Peagler owned several tracts of land in Scott County. On January 22, 1949, he transferred the tract known as Lot 8 to his daughter, Katie Ethel Measells. That same day, he transferred Lots 6 and 7 to Katie's brother, Marion Wayne *390 Peagler. In 1971, Measells acquired Lots 6 and 7 from her brother via warranty deed. When Marion Wayne Peagler died in 1976, his son, Donald Wayne Peagler, and his daughter-in-law, Bonnie Perritt Peagler, inherited the remainder of his property, which bordered Measells's on the south. Those owners are the appellants here.
¶ 3. A fence separated Measells's land from that of the Peaglers. The parties treated it as the property line, although the Peaglers claim they were always aware that they owned a strip of property north of the fence. In 1995, the Peaglers became aware that they held record title to a larger area of land than they previously realized, approximately twenty acres which Measells was cultivating. The Peaglers announced their intention to build a small barn and to fill in two ponds on the northern side of the fence. According to Measells, this was the first time the Peaglers had claimed that they were the rightful owners of a portion of her land.
¶ 4. On June 7, 1996, Measells filed a claim for relief, alleging that the true record boundary line of the property was at the fence. She sought to have it declared the southern boundary of her property. Measells also requested that the court vest title to the disputed tract solely in her. That same day, a temporary restraining order was issued, based on allegations that the Peaglers had prepared warranty deeds purporting to convey the entirety of Lots 6 and 7, had cut trees from Measells's land, had attempted to close a public road, had trespassed and removed portions of the fence, and had prevented Measells's lessee from cultivating the land. An amended complaint was filed on August 6, 1996, in which Measells alleged that she had acquired title through adverse possession.
¶ 5. A bench trial was held on August 18, 1996. The chancellor found that Measells had adversely possessed the disputed tract. He went on to set the boundary line as running due west in a straight line from a pond located on the eastern corner of the property.

DISCUSSION
¶ 6. When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied. Mercier v. Mercier, 717 So.2d 304, 306 (Miss.1998).
¶ 7. Adverse possession is defined by statute:
Ten years' actual possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title....
Miss.Code Ann. § 15-1-13 (Supp.1998). For possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Rice v. Pritchard, 611 So.2d 869, 871 (Miss.1992). The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. Id. The question in the end is whether the possessory acts relied upon by the would be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership. Johnson v. Black, 469 So.2d 88, 90-91 (Miss.1985).
¶ 8. The Peaglers concede that Measells has satisfied each of the elements of adverse possession, with the exception that the possession be actual or hostile. They claim that Measells's possession was not adverse because it was with their permission. According to the Peaglers, they were aware that Measells was occupying *391 and farming the land. However, because Measells was a member of the family, they never complained and permitted her to continue.
¶ 9. If possession is permitted by the owner, it cannot be adverse. "Adverse possession is totally inconsistent with that of permissive use." Thornhill v. Caroline Hunt Trust Estate, 594 So.2d 1150, 1153 (Miss.1992). "Adverse use is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right." Cummins v. Dumas, 147 Miss. 215, 113 So. 332, 334 (1927).
¶ 10. Measells gained possession of the disputed tract in 1971 when she acquired Lots 6 and 7 from her brother. There is substantial evidence that from 1971 forward, Measells treated all property north of the fence line as her own. She and her former husband farmed it and used it as pasture land. They cut timber from a portion of the disputed land and kept all the proceeds. The Peaglers never sought any of the proceeds. Measells also leased the property and received all rental income. Again, the Peaglers never complained nor did they seek a portion of the rents.
¶ 11. At trial, Donald Wayne Peagler admitted that Measells had treated the land as her own. Moreover, he agreed that he had never given her permission to use the land, nor did she request it. In Rice v. Pritchard, the court refused to find a permissive use where "Rice never waivered in his position that he owned the land in dispute, and Pritchard's predecessors in title did nothing to interfere with Rice's possession and claim of ownership of the land." Rice, 611 So.2d at 873. The record reveals that at no time did Measells retreat from her position that she owned the land. Neither Peagler nor his predecessor in title, his father, did anything to interfere with Measells's possession.
¶ 12. It is true that when a close family relationship is involved, "proof of adverse possession is not ordinarily as easily established as when the parties are strangers. Stronger evidence is desirable in such cases." Georgia Pacific Corp. v. Blalock, 389 So.2d 498, 501 (Miss.1980). Yet we find no error in the chancellor's conclusion that such strong evidence was presented here.
¶ 13. One argument that Measells's use was permissive arises from the fact that Measells did no harm to the property and used it in substantially the same manner as the Peaglers used their own land. Additionally, because Mr. Peagler's father was in poor health and had limited income, he was unable to have the land surveyed when it was in his possession. The beneficial manner in which Measells was using the land does not thwart her adverse possession claim. As long as she used the land as her own and satisfied all other elements of adverse possession, she is entitled to it. The fact that Peagler's father was ill and could not afford to have a survey conducted does not interfere with the running of the period of adverse possession.
¶ 14. The Peaglers argue that a conversation that occurred in the early 1980's evidences Measells's awareness that the fence line was not the true boundary between the Measells property and the Peagler property. According to Peagler, Measells's husband stated that some timber had been cut from Mrs. Measells's land. He informed the Peaglers that a portion of their timber may have mistakenly been cut as well. He then said that he would have the land surveyed and would build a new fence along the boundary.
¶ 15. The chancellor found that "[w]ith respect to the testimony regarding the conversation ... at the Branch Baptist Church, the Court finds that, if such a conversation did occur, which W.J. Measells denies, that, in all probability, it involved just that `small corner,' as described by the Defendant in *392 his testimony...." We cannot say that this finding constitutes manifest error. Moreover, if the conversation did occur, it likely took place after the limitations period had run, as the Measells had possessed and cultivated the land at least since its acquisition in 1971. The conversation allegedly was in the early 1980's, but by 1981, adverse possession was complete.
¶ 16. The Peaglers assert that although they were always aware that they held record title to a portion of the land Measells was cultivating, they never attempted to remove her out of a sense of "benevolence." In one precedent, the record landowner allowed someone else to remain on its land for many years, though the initial entry was not consensual. McSwain v. B.M. Stevens Co., 247 So.2d 707, 709 (Miss. 1971). In finding that the land had been adversely possessed, the court noted that "in this instance a benevolent attitude in not evicting Zep McSwain from the three acre tract resulted in its loss. The failure to evict, however, does not constitute permissive use." Id. The Peaglers failed to remove Measells and as a result, they lose twenty acres of their land.
¶ 17. One last conversation occurred that allegedly undermines the possession. It occurred during efforts to resolve the dispute prior to Measells's filing suit. Measells's son-in-law, who was serving as her attorney at the time, informed the Peaglers' attorney that Measells was not claiming adverse possession but rather that the fence line was the property line described in the deed. All that reveals is that Measells was likely in good faith in using land that she considered to be hers. Indeed, in many if not most adverse possession cases the evidence is that the adverse possessor thought that he had record title. Such evidence is entirely consistent with adverse possession.
¶ 18. THE JUDGMENT OF THE SCOTT COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.