760 So.2d 795 (2000)
Gregory L. CHEATHAM, Appellant,
v.
Richard O. STOKES, Appellee.
No. 1999-CA-00279-COA.
Court of Appeals of Mississippi.
February 29, 2000.
*796 Henry Palmer, Meridian, Attorney for Appellant.
Helen J. McDade, De Kalb, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., DIAZ, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. In October 1994 the appellee in this case, Richard Stokes (Stokes), filed a complaint to quiet and confirm title to the land at issue here. A Kemper County chancellor ruled Stokes owned the land, and a survey need be acquired to determine the definite boundaries of the land in question. Feeling aggrieved of such judgment, Gregory Cheatham now appeals.

FACTS
¶ 2. The parties involved in this case are cousins and are disputing over ownership of a certain parcel of land. The land was originally owned by G.J. Stokes, Appellee Stokes's grandfather and Appellant Cheatham's great grandfather. At G.J. Stokes's death in 1944, his heirs conveyed his land in two tracts to the decedent's sons, M.O. Stokes (Appellee Stokes's father) and to D.W. Stokes.
¶ 3. The description of each's parcel of land is as follows: M.O. Stokes was conveyed the north ¾th of the W ½ of the NE ¼ and two acres in the northeast corner of the NE ¼ of NW ¼ of Section 17, Township 12, Range 14. D.W. Stokes was conveyed the NE ¼ of NW ¼ of Section 17, Township 12, Range 14, less the two acres in the northeast corner conveyed to M.O. Stokes. The location of the boundary between these two tracts of land is being questioned with this appeal.
¶ 4. In making his ruling, the chancellor heavily weighed testimony from Stokes, his mother who lived on the property, and his brother. All testified that following the building of the boundary fence in 1944, the M.O. Stokes family used the property in question for growing cotton, for a garden, a chicken house, a hog pen, and an outhouse was on the land as well. The chancellor also found the M.O. Stokes family was in exclusive possession of the property, that D.W. Stokes never made any claim to the land, and that the testimony of M.O. Stokes's widow showed the intent in erecting the fence was to delineate a boundary line. The chancellor adjudged that, pursuant to the elements necessary to prove adverse possession, the land did belong to M.O. Stokes family.
¶ 5. Since the original fence was constructed irregularly and the true boundary could not be identified, the chancellor also ordered the parties to select a registered surveyor to find the true boundary.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 6. Cheatham raises two issues with this appeal. The first regards whether the trial court committed error in refusing to grant a Mississippi Rule of Civil Procedure 41(b) motion for Cheatham at the conclusion of Stokes's case. The second issue regards whether the trial judge's findings of fact in awarding the disputed land to Stokes by adverse possession were unsupported *797 by substantial evidence, were manifestly wrong and were against the overwhelming weight of the evidence.
¶ 7. Our standard for reviewing the decision of a chancellor is well-established. "When reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings. In other words, we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied." Mercier v. Mercier, 717 So.2d 304(¶ 8) (Miss.1998) (citations omitted).
¶ 8. Finding the evidence to support the chancellor's finding, we affirm the chancellor's decision granting Appellee Stokes ownership of the disputed land.

ANALYSIS OF THE ISSUES PRESENTED

I. WHETHER THE TRIAL COURT COMMITTED ERROR IN REFUSING TO GRANT A RULE 41(B) M.R.C.P MOTION FOR CHEATHAM AT THE CONCLUSION OF STOKES'S CASE.
¶ 9. Cheatham claims the chancellor incorrectly refused to rule in his favor because Stokes permissively used the land, which Cheatham claims is contrary to statute, and because Stokes failed to provide a valid legal description of the land in his petition.
¶ 10. Rule 41(b) of the Mississippi Rules of Civil Procedure is entitled "Involuntary Dismissal: Effect Thereof" and states the following:
[A] defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court may make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any other dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
M.R.C.P. 41(b) (1999). We find the chancellor was proper in not granting the 41(b) motion as the facts and the law presented require judicial resolution.
¶ 11. Cheatham argues Stokes used the land "permissively" which negates Stokes's ability to acquire the land via adverse possession. In distinguishing a "permissive" use from an "adverse" use, we look to this Court's recent case, Peagler v. Measells, 743 So.2d 389 (Miss.Ct. App.1999).
¶ 12. In Peagler, a fence separated two tracts of land, one tract owned by an aunt and the other tract owned by her nephew. Both parties treated the fence as the boundary line between their two parcels of land. The nephew claimed he knew all along he owned an additional twenty acres to the north of the fence and says he did not object to his aunt's farming this twenty acres for several years in the past since she was family. Not until a 1995 review of the his property deed did the nephew find he actually held legal title to this twenty acres. After this discovery and upon the nephew's taking actions to build a barn and some ponds on the land, the aunt filed a claim with the chancellor to quiet title in this twenty acres to her by virtue of adverse possession. The chancellor found the aunt had acquired possession to the land via adverse possession and set the fence as the actual boundary line, which *798 added the twenty acres to the aunt's property.
¶ 13. "If possession is permitted by the owner, it cannot be adverse. `Adverse possession is totally inconsistent with that of permissive use' ... `Adverse use is defined as such a use of the property as the owner himself would exercise, disregarding the claims of others entirely, asking permission from no one, and using the property under a claim of right.'" Id. at 306 (¶ 9) (citations omitted).
¶ 14. The Peagler court cited Rice v. Pritchard, 611 So.2d 869 (Miss.1992), affirming the rule that if the person using the land never waivered from his or her claim of ownership, and if the actual legal owner never contested such proposed ownership, such use was not "permissive." Further, if no permission to use such land was ever requested or granted, such use could not be considered "permissive" but, rather, was "adverse." Peagler, 743 So.2d at 391 (¶ 11).
¶ 15. The case sub judice is factually similar to Peagler. In Peagler, the aunt treated the land as her own: she farmed it, harvested timber from it, used it for pasture, and leased it, all the while drawing no objection from the legal owner. In the present case, Stokes used the land for a garden, grew cotton on it, and made various other agricultural uses of the land. All the while, Cheatham never objected to the Stokeses' use of the land, just the same as the nephew never objected to his aunt's use of the land in Peagler.
¶ 16. Applying the conclusions reached in Peagler, we find the Stokeses' use of the land was not permissive and was adverse, thus rendering the chancellor's finding for Stokes to be correct.
¶ 17. Cheatham's second claim that the chancellor erred in not granting his Rule 41(b) motion regards the inexactness or nonexistence of a definite disputed boundary line. Cheatham argues Stokes did not meet his burden of establishing a definite description of the contested property.
¶ 18. Oliver Limerick, the county surveyor for Kemper County, testified he surveyed the area in question several years earlier, though he had no record of the date of such survey and he presented no records to the chancellor describing his findings of such survey.
¶ 19. While Limerick testified he had worked as a surveyor for thirty-six years, the court questioned his qualifications as he was not a registered surveyor, pursuant to statutory law. The chancellor did make a determination of the boundaries of the parcel in question, with regard to the photographs admitted into evidence.[1] However, the chancellor qualified his description by ordering Cheatham and Stokes to secure a survey of the land by a registered surveyor and instructing them to file such survey with the court, or if they could agree on the boundary line, to write such agreement and file the agreement with the court. The record is void of any such survey or agreement. Therefore, we are left to conclude no such survey was conducted and now only review the chancellor's findings and the parties' briefs in support of each's respective positions.
¶ 20. Reviewing the chancellor's findings and his stated reasonings for such, we find he gave credence to Stokes's presentation *799 of photographs that showed the old fence and the new fence. With testimony presented, the chancellor noted Cheatham could not know M.O. Stokes's and D.W. Stokes's intent at the time the original fence was built in 1944 since Cheatham was a small child at the time; additionally, Cheatham offered no witness who was involved at the time the property was conveyed or at the time the fence was built to prove such intent. Regarding the testimony of M.O. Stokes's widow, Helen Brooks, the chancellor reasoned the evidence supported her contention that the old fence was meant to delineate the south and west boundary of the two acres in question.
¶ 21. "[W]here the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence." Simmons v. Cleveland, 749 So.2d 192 (¶ 9) (Miss.Ct.App.1999). As such, we find the chancellor's findings were supported by the evidence presented, and we decline to reverse his decision on this first issue.

II. WHETHER THE TRIAL JUDGE'S FINDINGS OF FACT IN AWARDING THE DISPUTED LAND TO STOKES BY ADVERSE POSSESSION WERE UNSUPPORTED BY SUBSTANTIAL EVIDENCE, WERE MANIFESTLY WRONG AND WERE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 22. Adverse possession is defined in Miss.Code Ann. § 15-1-13 (Supp.1999) as follows:
Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten (10) years after the removal of such disability, as provided in Section 15-1-7.
¶ 23. Further, Peagler describes the elements involved in a claim of adverse possession in Mississippi:
For possession to be adverse it must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. The burden of proof is on the adverse possessor to show by clear and convincing evidence that each element is met. The question in the end is whether the possessory acts relied upon by the would-be adverse possessor are sufficient to put the record title holder upon notice that the lands are held under an adverse claim of ownership.
Peagler, 743 So.2d at 390 (¶ 7) (citations omitted).
¶ 24. Reviewing each element stated above whereby a valid claim of adverse possession is matured, we find the award of title via adverse possession was well-founded. As stated before, the land was used under claim of ownership and was actual or hostile; use of land was quite open, notorious and visible as a fence was erected and the land was used for gardening and other visible operations; such activities continued for a continuous period long over the ten-year minimum; such uses were exclusive in that only the M.O. Stokes family gained advantage from the land; and such occupation was peaceful during this time, drawing no objection from Cheatham's family. The chancellor properly weighed these factors and found the claim of adverse possession was well-taken. As such, we agree and decline to reverse.

CONCLUSION
¶ 25. The findings of the chancellor were based on credible evidence, and we will not reverse.
*800 ¶ 26. THE JUDGMENT OF THE KEMPER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, AND THOMAS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] Chancellor's finding concerning boundary: Begin at the existing corner of the fence built by Gregory Cheatham on the public road, and run thence Southeast to an approximately 14 inch oak tree ...; thence run to a point six feet South and six feet West of the very large oak tree shown in the photos and identified as being near the Southwest corner of the two acres as bounded by the fence; then run in an Easterly direction to the North side of the pine stump identified as having had barbed wire in it and continue on that line in as Easterly direction to the East boundary of the NE-¼ of the NW-¼ run thence North to the Northeast corner of the NE-¼ of the NW-¼ thence run West along the North line of the NE-¼ of the NW-¼ to the fence corner referred to above at which this description began.