# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00181-COA

BONNIE (BAGGETT) MASK                                    APPELLANT

v.

ANTHONY BAGGETT                                          APPELLEE

DATE OF JUDGMENT:               09/28/2023
TRIAL JUDGE:                    HON. C. MICHAEL MALSKI
COURT FROM WHICH APPEALED:      PRENTISS COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         RICHARD SHANE McLAUGHLIN
ATTORNEY FOR APPELLEE:          JOHN A. FERRELL
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED - 05/20/2025
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., WESTBROOKS AND ST. PÉ, JJ.

### ST. PÉ, J., FOR THE COURT:

¶1.     After years of motion practice following a divorce in 2014, Anthony Baggett filed a complaint for a citation of contempt against his ex-wife, Bonnie Mask. Bonnie responded by filing a counter-claim for a citation of contempt, among other things. The parties reached a partial agreement on the pleadings after a hearing in March 2020, but the remaining issues, including contempt, were held in abeyance in August 2020 for the parties to work out separately or to be set for a later hearing.

¶2.     In October 2022, Bonnie moved for a hearing on the issues of contempt from 2020 and filed a new petition for a citation of contempt that she alleged occurred after the March 2020 hearing. All pending issues, which included the 2020 and 2022 claims of contempt, were heard in January 2023, and the chancery court entered a final order several months later

in September 2023. The chancery court held that neither party had presented sufficient proof as to the amount that each party claimed the other party owed and, therefore, denied both parties' contempt claims and denied their requests for attorney's fees. Bonnie then filed a motion to alter or amend the judgment under Mississippi Rule of Civil Procedure 59, which was denied, and she appealed.

¶3.     On appeal, Bonnie argues that the chancellor erred (1) in finding insufficient proof to rule in her favor; (2) in failing to consider the supplemental documentation she presented; (3) by depriving Bonnie of her "day in court" and violating her constitutional right to "due process" by ignoring the evidence she submitted in compliance with the procedure the chancellor established during the trial; (4) in failing to find Anthony in contempt for his failure to comply with unambiguous court orders; and (5) in failing to award Bonnie attorney's fees. Finding no reversible error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶4.     In 1986, Bonnie married Anthony, and the couple had four children during their marriage. In 2013, Anthony filed for a divorce, and one year later, the couple was granted a divorce in the Chancery Court of Prentiss County. Pursuant to the terms of the couple's consent agreement and divorce decree, Anthony was awarded legal and physical custody of the two youngest children, Adam and Elijah, while Bonnie was awarded legal and physical custody of their eldest son, Caleb.[1] Each party was required to pay child support to the other, and Bonnie was required to pay fifty percent of the cost of the children's health insurance,

---

[1] The eldest child, Olivia, was emancipated before her parents' divorce.

which Anthony was required to obtain. The parties were also required to "equally divide college expenses of their minor children."[2]

¶5.     Starting in August 2014, only three months after the divorce was granted, the parties began filing what would become a series of back-and-forth contempt claims against each other for "willfully and contumaciously" failing to abide by the terms of the divorce decree in some manner. They also asked for various modifications of the court's visitation determinations.

¶6.     In December 2018, the chancellor entered a consent judgment reflecting a new custody arrangement for Elijah,[3] affirming the requirements of the initial divorce decree regarding college expenses and health insurance, and requiring Anthony to transfer Caleb's MPACT account into Elijah's name.[4] The chancellor did not find either party in willful contempt.

¶7.     Less than a year later, Anthony filed a second claim for a citation of contempt in November 2019, arguing that Bonnie owed him $2,708.40 for her portion of the medical insurance premiums and other expenses he incurred on behalf of the children. He further

---

[2] In the divorce decree, college expenses were defined as "tuition, room and board, books, lab costs, and other required expenses at a Mississippi University."

[3] As for Elijah's brothers, Adam was enrolled in college at this time, and Caleb had reached the age of majority.

[4] The judgment stated,"The prior provisions relative to college shall similarly remain in full force and effect as relative to Adam," and "Anthony shall continue to maintain health insurance for the two minor children of the parties with the parties dividing equally the cost of said coverage." The acronym MPACT here refers to a Mississippi Prepaid Affordable College Tuition plan.

alleged that Bonnie had repeatedly interfered with his custodial visitation time with Elijah, in violation of their agreement.

¶8.     Bonnie fired back with a counter-claim in March 2020, alleging that Anthony had refused to pay certain expenses incurred on behalf of the minor children, including college expenses and extracurricular expenses.[5] She also argued that she had requested reimbursement for her incurred medical bills from Anthony, which he refused, and that as a registered nurse, she had provided "free" medical care to the children, reducing overall medical costs for both parties. Again, Anthony and Bonnie each requested the court find the other in contempt and to award attorney's fees.

¶9.     The parties' second set of contempt claims largely centered on the "equal division" of medical expenses, and the court entered an order setting forth the procedure for the collection of medical expenses in August 2020. That order also reiterated the requirement that the MPACT accounts be transferred from Caleb to Elijah. Finally, the order stated that all issues raised in the pleadings that were not addressed in the August 2020 order were held in abeyance for the parties to either work out by agreement or to reset the issues for hearing. Each party's allegations of contempt against the other were not addressed in the 2020 order.

¶10.    In 2022, almost two years after this 2020 order, Bonnie filed a motion to reset a hearing on the issues of contempt that had been left unresolved, and she filed a new petition for a citation of contempt that she claimed occurred after her March 2020 contempt petition. She now claimed that Anthony owed her approximately $10,500 for both old and new

---

[5] Bonnie's complaint does not allege an amount owed.

expenses.

¶11.   Following Bonnie's motion, the court set a hearing on both parties' alleged contempt. At the hearing, both parties testified about the other's failure to pay half of their children's expenses and argued that these failures signified contempt of the court's previous orders. The testimony of both parties involved a substantial amount of debate regarding which party owed how much, for what, and why. At the conclusion of the hearing, the court granted the parties ten days to supplement the record with evidence of receipts and provide proof of their claimed expenses.

¶12.   In September 2023, after hearing the testimony of the parties, reviewing the documents admitted into evidence, and reviewing the post-hearings letters[6] related to expenses owed, the chancery court found that "neither party ha[d] presented sufficient proof as to the amount" that each party claimed was owed by the other. As such, the court denied any relief based on a claim of contempt, which resulted in the requests for attorney's fees being denied.

¶13.   Bonnie filed a motion to alter or amend the judgment pursuant to Mississippi Rule of Procedure 59, which was subsequently denied. Bonnie then filed a notice of appeal.

**STANDARD OF REVIEW**

¶14.   "We will not reverse a chancellor's findings of fact or discretionary rulings unless the

---

[6] Neither party formally submitted or filed any evidence with the court but, rather, as instructed by the chancellor, sent their letter briefs and supplemental documentation directly to him. The chancellor's ruling acknowledged he had reviewed the post-hearing letters. A subsequent motion Bonnie filed also suggests that the parties both provided documentation via letter or email to the chancellor at some point prior to his ruling.

chancellor abused [his] discretion, committed a manifest or clear error, or applied the wrong legal standard." *Townsend v. Townsend*, 859 So. 2d 370, 371-72 (¶7) (Miss. 2003). We review issues of law de novo. *Id.* at 372 (¶7).

**DISCUSSION**

¶15.　On appeal, Bonnie raises several issues, taking special issue with the chancellor's holding that there was "insufficient proof" for the court to rule in her favor. She also claims that the chancellor failed or refused to consider the supplemental documentation she presented following the January 2023 hearing. Additionally, Bonnie argues that the chancellor "deprived her of her day in court" allegedly in violation of due process by ignoring the evidence she submitted. Lastly, she claims the chancellor erred by failing to find Anthony in contempt and for failing to award her attorney's fees. Finding no reversible error, we affirm.

### I.　"Sufficient Proof"

¶16.　Bonnie's first three issues on appeal center around her contention that she provided the chancellor with "sufficient proof" of the amount Anthony allegedly owed her. We will address these three issues as one. In essence, Bonnie objects to the chancellor's finding that neither party "presented sufficient proof as to the amount that each party claims the other party owes" and to his denial of any relief to either party. She argues that she "provided the trial court with an abundance of evidence from which the court could determine the specific amount that Bonnie was owed by Anthony."

¶17.　In support, she relies heavily on the approximately thirty-six pages of receipts,

cancelled checks, and itemizations attached to her Rule 59 motion. Bonnie alleges she submitted these same documents to the chancellor pursuant to his instructions at the January 2023 hearing. She further contends that had the chancellor taken her documentary evidence into consideration, he could not have possibly found that she presented "insufficient proof."

¶18.    In this Court, "[w]hen reviewing a chancellor's decision, we will accept a chancellor's findings of fact as long as the evidence in the record reasonably supports those findings." *Peagler v. Measells*, 743 So. 2d 389, 390 (¶6) (Miss. Ct. App. 1999). Moreover, "[t]he scope of review in domestic cases is limited by the substantial evidence/manifest error rule. This Court will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard." *Lee v. Lee,* 154 So. 3d 904, 906 (¶5) (Miss. Ct. App. 2014) (citations omitted). In other words, this Court will not disturb the chancellor's factual finding that "neither party ha[d] presented sufficient proof as to the amount each party claims the other party owes" unless we determine that the chancellor's findings of fact are "clearly erroneous." Additionally, the Mississippi Supreme Court has held that "under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce, alimony and child support," those findings are not to be overturned on appeal "unless [the chancellor's] findings were manifestly wrong." *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010).

¶19.    The record is replete with testimony and evidence that neither party knew exactly what each claimed to be owed. For example, during Bonnie's cross-examination at the January 2023 hearing, she admitted that she had not reimbursed Anthony for her portion of the

7

children's health insurance since November 2018. Bonnie explained her nonpayment by saying that she was "deducting it from what [Anthony] owes me." Yet, she does not explain which of her claimed expenses she "deducted" this money from or how she ultimately accounted for these deductions.[7]

¶20. Bonnie's testimony not only indicated her uncertainty about the ways she calculated some of her expenses but also showed the difficulty she had in maintaining precise records regarding the date certain payments or reimbursements were made. When questioned by counsel about one of Anthony's claimed expenses related to Adam, the following dialogue occurred:

> Q: Ok and then half of Adam's tuition that he's got down here (speaking of Anthony's list of expenses) do you know what period of time that was $696.00?
>
> A: I am not sure.
>
> Q: Are you doubting that he paid that and that you owe him half of that money?
>
> A: No, I am not doubting anything.
>
> Q: Ok.
>
> A: *It's just a lot of dates and a lot of numbers*.

(Emphasis added).

¶21. Similarly, Anthony's testimony mirrored Bonnie's testimony and reflected his own uncertainty regarding some of his claimed expenses. When asked to explain why he had a

---

[7] Furthermore, none of the chancellor's previous orders authorized this self-determined method of expense deduction.

listed expense of $1,750 provided to Adam, Anthony stated, "I gave him that to finish up paying what bills he needed to pay. And then if he – you know, he was going to have to start a new career away from college, as well, so that was for him to just take care of some *miscellaneous bills* that he needed to take care of." (Emphasis added).

¶22. On appeal, Bonnie relies heavily on the exhibit attached to her Rule 59 motion to show that she presented sufficient proof of money owed and that the chancellor erred by finding otherwise. But this exhibit was attached to the Rule 59 motion made *after* the September 2023 order. There is nothing in the record to show what documentation either Bonnie or Anthony provided in their "post-hearing letters." In reviewing the September 2023 order, we will only review what was in the record at that time.

¶23. At the end of the January 2023 hearing, both parties were given ten days to submit written documentation supporting their claimed expenses. While the record reflects that neither party submitted any documentation within the ten-day deadline set by the chancery court, the chancellor did note in his final judgment that he reviewed the "post-hearing *letters* filed by the *parties*." (Emphasis added). Such a statement clearly indicates that he considered the information the parties supplied when reaching his final judgment. The problem on appeal, however, is that the letters to the judge were not filed, so this Court cannot review exactly what was submitted by Anthony or Bonnie, nor can we presume that the documents Bonnie attached to her Rule 59 motion are the exact same as those she sent to the chancellor.

¶24. If either party sought appellate review in consideration of supporting documentation, they should have ensured those documents were made a part of the record on appeal. "It is

9

the appellant's duty to see that all matters necessary to his appeal, such as exhibits, witnesses' testimony, and so forth, are included in the record, and he may not complain of his own failure in that regard." *Scott v. Rouse*, 348 So. 3d 345, 349 (¶14) (Miss. Ct. App. 2022) (quoting *Branch v. State*, 347 So. 2d 957, 958 (Miss. 1977)); *accord* M.R.A.P. 10. Essentially, the failure of the parties to *file* the papers led to this Court being unable to review the specific documents or evidence the parties provided directly to the chancellor.

¶25. It is clear from our review of the record and the parties' testimonies that neither party was certain of the money he or she had spent, what the money was used for, or if they had been reimbursed for any specific expense. Although the testimonies conflicted in many ways, this Court has held that "[w]here there is conflicting testimony, the chancellor is the trier of fact and adjudicates the credibility of each witness." *Lee*, 154 So. 3d at 907 (¶12). The words in *Lee* are particularly applicable to the instant case, as the chancellor has had roughly ten years of experience with the parties litigating various disputes.

¶26. The parties' vaguely labeling expenses as "miscellaneous" or saying, "I am not sure," when asked about evidence of reimbursement, without other evidence in the record, does not equip this Court to conclude the chancellor abused his discretion by holding that "neither party presented sufficient proof" of their claimed expenses. The chancellor's judgment finding neither party had provided sufficient proof of their claimed expenses is supported by what is in the record—the parties' testimony—and what is not in the record—both the parties' accounting of expenses.

## II. Bonnie's Documentation

10

¶27. On appeal, Bonnie argues that the documents she submitted "clearly establish that [she] incurred expenses pertaining to the minor children in the amount of $25,016.16." But nothing in the record shows that the exhibits attached to her Rule 59 motion contain the same documents as the "letter" the chancellor referred to in his ruling, so we cannot consider them in our review of the chancellor's September 2023 ruling. We can consider those documents only insofar as we review the denial of Bonnie's Rule 59 motion, which she did not challenge on appeal. However, we will address the denial for finality's sake.

¶28. Precedent holds that "to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004). We "review[] a trial court's denial of a Rule 59 motion under an abuse of discretion standard." *Id.*

¶29. After a careful review of Bonnie's Rule 59 motion and attached exhibits, we find no abuse of discretion in the chancellor's denial of her motion. Bonnie's motion presented no new evidence regarding her claimed expenses, did not claim an intervening change in controlling law, and did not show a clear error of law or manifest injustice.

¶30. An inspection of Bonnie's claimed expenses reveals that a large portion of her alleged expenses relate to college costs associated with Adam after he had reached the age of majority in early 2020. The parties' divorce decree required the parties to "divide equally college expenses of the *minor children* being tuition, room and board, books, lab costs and other required expenses at a Mississippi University." (Emphasis added). In *Stokes v. Maris*,

596 So. 2d 879 (Miss. 1992), our Supreme Court made it clear that under statutory law, "[o]ur courts have no authority . . . to require parents to provide for the care and maintenance of their child after the child becomes emancipated, by reaching the age of twenty-one (21), or otherwise[.]" *Id.* at 881. Nor did Bonnie and Anthony agree to post-emancipation care by separate agreement. *See Mottley v. Mottley*, 729 So. 2d 1289, 1290 (¶8) (Miss. 1999) (requiring a father to pay post-emancipation support when he agreed to do so in a "Property Settlement and Child Custody Agreement"). Therefore, any expense incurred after Adam's twenty-first birthday by either party need not have been "equally divided."

¶31.    Stated differently, nothing in the record suggests Anthony was required to reimburse Bonnie for any college expenditures after Adam reached age twenty-one. The terms of the divorce decree consistently used the phrase "minor children" when detailing the expenses subject to "equal division" by the parties. Moreover, nothing in any of the previous orders indicates that the chancellor ever considered imposing a support obligation on the parties after their children reached the age of majority.[8]

¶32.    Additionally, it is not clear from Bonnie's documentation—containing handwritten accountings, summaries, and annotations—which of Bonnie's claimed expenses the chancellor intended the parties to equally divide. Some of Adam's "college expenses" that Bonnie sought reimbursement from Anthony include a $25 expense for "school supplies" purchased from Dollar Tree, an $18 expense for an iron and "media assistant" from Ollie's

---

[8] Bonnie suggested in her Rule 59 motion that "while not on the record, the [c]ourt told both attorneys in chambers that Anthony would be responsible for college costs." As Bonnie states, this is not in the record.

12

Bargain Outlet, and a $24 expense for towels purchased from Bargain Hunt. It is unclear whether these purchases were intended to be equally divided as "college expenses."

¶33.   In sum, Bonnie fails to show the chancellor abused his discretion by denying Bonnie's Rule 59 motion due to a clear error or manifest injustice.

### III.   Contempt and Attorney's Fees

¶34.   In her final two arguments on appeal, Bonnie claims the chancellor erred by failing to find Anthony in contempt and for failing to award her attorney's fees. Similar to Bonnie's other arguments, these claims will be addressed as one. In essence, Bonnie argues that Anthony's failure to reimburse her for half of her claimed expenses and his failure to transfer the MPACT into Elijah's name evidence his contempt, and she argues she should have been awarded attorney's fees for having to prosecute the contempt claims.

¶35.   "[C]ontempt matters are committed to the substantial discretion of the trial court," and the findings of the chancery court "will not be disturbed unless manifestly wrong." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014). Moreover, "[a] contempt citation is proper" when "the contemner has wilfully and deliberately ignored the order of the court." *Lewis v. Pagel*, 172 So. 3d 162, 178 (¶39) (Miss. 2015). Furthermore, "[a] chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Fortner v. Bratcher*, 394 So. 3d 452, 458 (¶24) (Miss. Ct. App. 2024). Thus, a chancellor's decision on an issue of civil contempt is afforded significant deference, and "the factual findings of the chancellor [will be] affirmed unless manifest error is present and apparent." *Id.* (internal quotation mark omitted).

¶36. Here, we cannot say the chancellor committed manifest error by denying both parties their requested relief "due to the inability of the [c]ourt to determine from the evidence presented what, if anything, each party owes the other." As discussed, we affirm the chancellor's finding that the parties had presented insufficient proof of contempt related to their alleged failure to pay various expenses. Bonnie argues that Anthony should have been held in contempt at least for his failure to transfer the MPACT funds as ordered, but a review of Anthony's testimony shows that he was attempting to move the funds. At a minimum, it does not show a willful and deliberate refusal to follow the court's orders. The chancellor's decision not to hold Anthony in contempt for the MPACT transfer is supported by the record, and we find no manifest error.

¶37. Because no one was held in contempt, no one was awarded attorney's fees. "Attorney's fees are awarded to make the plaintiff whole in contempt actions." *Riley v. Riley*, 196 So. 3d 1159, 1163 (¶19) (Miss. Ct. App. 2016). "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Wilson v. Stewart*, 171 So. 3d 522, 529 (¶21) (Miss. Ct. App. 2014). After review, we find no reversible error here.

**CONCLUSION**

¶38. Based on the record on appeal, the chancellor did not err by denying Bonnie's contempt petition after finding that she presented insufficient evidence to support her claims that Anthony owed her money for various expenses. The evidence Bonnie relies on in her

14

arguments to this Court is contained in the attachment to her Rule 59 motion, but because this information was not filed and made part of the record, we cannot say with certainty that this same evidence was supplied to the chancellor before rendering the final judgment—or that he failed to consider it. In fact, the final judgment states he did consider the post-hearing letters. Furthermore, we cannot conclude that the chancellor erred by declining to hold Anthony in contempt for the continued delay in transferring the MPACT funds. Finally, the chancellor did not err by declining to award attorney's fees, as neither party was found in contempt.

¶39. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.**