743 So.2d 1066 (1999)
William Thomas PITTS, Jr. and Margaret Pitts, Appellants,
v.
Iris Ann FOSTER, Appellee.
No. 1998-CA-01232-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*1067 Chester D. Nicholson, Gulfport, Attorney for Appellants.
Sara Fullilove Gallaspy, New Augusta, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND LEE, JJ.
KING, P.J., for the Court:
¶ 1. Appellants, Mr. and Mrs. Pitts, filed their "Complaint to Establish Easement by Necessity and for Damages" in the Perry County Chancery Court on February 10, 1997. After the parties appeared for trial on June 23, 1998, the chancellor rendered his written judgement on July 1, 1998, denying the Pitts' request for an easement by necessity over Appellee Foster's property.
¶ 2. Aggrieved by the judgment, the Pitts appeal, raising two issues, which we quote verbatim:
1. AN EASEMENT BY NECESSITY SHOULD HAVE BEEN GRANTED BY THE COURT, SINCE THE PERMIT GIVING THE PLAINTIFFS ACCESS TO THEIR LAND ACROSS U.S. FOREST SERVICE PROPERTY IS TERMINABLE AT WILL AND DOES NOT RUN WITH THE LAND.
2. AN EASEMENT BY NECESSITY SHOULD HAVE BEEN GRANTED BECAUSE WITHOUT IT, AN IMPROPER RESTRICTION ON ALIENATION EXISTS.
We reverse the judgment of the chancery court and remand the case.

FACTS
¶ 3. The parties stipulated certain facts which the chancellor incorporated into his "Findings of Fact, Conclusions of Law and Judgment of the Court." The facts included the stipulation that the Pitts obtained, by warranty deed from Kenneth G. Mixon and Christine E. Mixon, a tract of land, approximately six acres, that borders the tract which Appellee Iris Foster inherited from Avery Fiveash. We quote the chancellor's further findings of fact from his judgment, in which he refers to the Pitts as "Plaintiff" and Foster as "Defendant":
3. Both pieces of property of Plaintiff and of Defendant emanated from the same source known as the "Old Herring Homestead" and were kept together in a line of common grantors until the late 1970s when Marvin Fiveash began to parcel up the property. At that time, Plaintiffs property as it is now known came into being.
4. The nearest public service road to the Plaintiffs property is the Forrest Cochran Road.
5. Plaintiff traveled to the Forrest Cochran Road over the land of the Defendant until Defendant cut off Plaintiffs access to Defendant's land sometime *1068 in 1996. Previous owner's [sic] of Plaintiffs land had also traveled over Defendant's land to gain access to the Forrest Cochran Road.
6. After Plaintiffs ability to travel to Forrest Cochran Road over Defendant's land was terminated by Defendant, Plaintiff obtained a Private Road Special-Use Permit from the United States Forest Service for a right of way to gain access to the nearest public roadway. The Forest Service permit states that the permit "may be terminated, revoked, or suspended upon breach of any of the conditions herein or at the discretion of the Regional Forester."
¶ 4. From these facts, the chancellor concluded that the Pitts' acquisition of a new route to their property from the nearest public roadway terminated the need for an easement across Foster's property, and the court denied the Pitts' request for an easement by necessity.

DISCUSSION
¶ 5. Our review of the record reveals that the Pitts propounded discovery requests to Foster, including interrogatories, a request for production, and a request for admissions. Foster failed to respond to these requests, and the Pitts moved for summary judgment, noting that Foster's failure to respond to their request for admissions within thirty days should be deemed as admissions pursuant to Rule 36, Mississippi Rules of Civil Procedure. Although the original request for admissions is not included in the record, the Pitts averred in the brief in support of their motion for summary judgment that Requests 7, 8, and 9 for admissions included Foster's admission that she terminated the Pitts' access to her land "out of spite and malice, and that she had no valid reason for her attempt to terminate their access to their property."
¶ 6. The chancery court denied the Pitts' motion for summary judgment, finding that a genuine issue of material fact existed as to whether the permit from the U.S. Forest Service extinguished the necessity of an easement across Foster's property. The record does not indicate whether the chancellor considered the information deemed admitted by Foster's failure to respond to the Pitts' request for admissions in rendering his judgment. That information was potentially relevant to the resolution of this case and should be considered on remand.

I. Should an easement by necessity have been granted since the permit from the U.S. Forest Service is terminable at will and does not run with the land?
¶ 7. The Mississippi Supreme Court addressed the issue of easements by necessity in the case of Broadhead v. Terpening:
It is well-established that an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing on the lands of another. E.g., Taylor v. Hays, 551 So.2d 906, 908 (Miss.1989); Medina v. State of Mississippi ex rel. Sumner[Summer], 354 So.2d 779, 784 (Miss.1978); and Pleas v. Thomas, 75 Miss. 495, 500, 22 So. 820, 821 (1897). Such easements or rights-of-way by necessity last as long as the necessity exists and terminate when other access to the landlocked parcel becomes available. E.g., Taylor, 551 So.2d at 908; and Thornton v. McLeary, 161 Miss. 697, 702-703, 137 So. 785, 786-787 (1931).
Broadhead v. Terpening, 611 So.2d 949, 953 (Miss.1992); see Rowell v. Turnage, 618 So.2d 81, 85 (Miss.1993). The court considered common law principles and case law of other states and concluded that easements of necessity are "appurtenant to the dominant tenement and run with the land." Broadhead, 611 So.2d at 954.

A. Did the Pitts acquire an easement by necessity when they acquired their tract of land?
¶ 8. The fact that the dominant and servient estates originated from the *1069 severance of a "commonly-owned tract of land" is undisputed in the present case. In applying the decision of Broadhead, we find that an easement by necessity was established when the larger parcel was severed, and that easement has run with the land in spite of further changes of ownership. Foster notes that the easement was not recorded and was not a part of the warranty deed by which the Pitts acquired their property. An easement by necessity is appurtenant to the dominant tenement. Id. The easement requires no written conveyance because it is a vested right for successive holders of the dominant tenement and remains binding on successive holders of the servient tenement. Id. Pursuant to the law as it applies to these facts, we discern that the Pitts had an easement by necessity when they acquired the property.

B. Did the permit from the U.S. Forest Service terminate the Pitts' easement by necessity?
¶ 9. Foster asserts that she "was forced to cut off access to her property because the Appellants ... had abused and violated the right to cross her property [and] continued to disregard her wishes, violate her rules, disturb her household and trespass on her property." In her cross-complaint, she states that the Pitts "invad[ed] her property without her permission." However, Foster states in her brief that she offered to sell an easement to the Pitts, suggesting that the purported problems that Foster said were caused by the Pitts could have been solved if the Pitts had agreed to pay Foster for a right they already possessed. The supreme court has instructed that, "[b]y acquiring the dominant estate, one has already paid for and procured the legal right of access to and from that parcel." Broadhead v. Terpening, 611 So.2d 949, 955 (Miss.1992).[1] Foster also mentions in her brief that the previous owners of the Pitts' property "were more amicable and did not create problems." We note that Foster did not take possession of her property until 1997, and the Pitts purchased their land several years earlier in 1990.
¶ 10. Having determined that the Pitts possessed a right-of-way across Foster's land, we opine that Foster should not have denied access to that right-of-way. Pursuant to Mr. Pitts' affidavit, he was forced to negotiate a permit with the U.S. Forest Service after Foster denied access to the Pitts' land. To maintain the permit, the Pitts must pay an annual fee to the Forest Service for a right of which Foster deprived them. Although Foster's attorney asserted in court that Mr. Pitts "only pays ONE HUNDRED AND TWENTY-FIVE DOLLARS ($125.00) a year," the terms of the permit allow the Forest Service to readjust the cost if the fair market value of the authorized use increases. As explained above, the Pitts already paid for the legal right of access to their land when they purchased the property. See Broadhead, 611 So.2d at 955. This Court finds that requiring the Pitts, who were wrongly deprived of their right pursuant to the easement by necessity, to pay for alternative access to their property is not an equitable solution to this matter.
¶ 11. Moreover, the permit from the Forest Service is only a temporary solution. While Foster contends that "the U.S. Forest Service is not vindictive and does not arbitrarily, without a reason, revoke and suspend a permit if the land owner is correctly using such a privilege," *1070 we emphasize that the permit grants the permittee only a "privilege" and not a "right." The permit specifically states that it "may be terminated, revoked, or suspended upon breach of any of the conditions herein or at the discretion of the Regional Forester." (emphasis added). Rather than accepting Foster's contention that the permit would only be revoked if the permittee fails to exercise the privilege "correctly," we embrace the actual terms that the U.S. Forest Service elected to include in the permit. Considering the costs and the revocable nature of the permit, we opine that the Pitts could easily find themselves without access to their property again in the future, compelling further court proceedings.
¶ 12. In Taylor v. Hays, 551 So.2d 906 (Miss.1989), the supreme court mentioned several manners in which an easement by necessity might terminate.
If the owner of a way of necessity acquires other property over which he may pass, or if public way is laid out which affords access to his premises, or if a new way is established by a judgment in partition, the right to a way of necessity ceases.
Id. at 908-9, quoting Thornton v. McLeary, 161 Miss. 697, 702-703, 137 So. 785, 786-787 (1931). The easement by necessity in the present case did not cease because a new public way was laid or because the owner acquired adjoining property over which he could pass to a public road. The Pitts only sought alternative access to their land after Foster refused to be bound by the easement that ran with the land. To uphold the chancellor's ruling that the permit from the Forest Service terminates the easement by necessity would reward Foster for wrongly denying the Pitts' right to access to their land. Moreover, it would punish the Pitts for seeking a temporary solution for the duration of the litigation in this case.
¶ 13. This Court holds that the permit from the U.S. Forest Service is insufficient, in this case, to terminate the easement by necessity that runs with the property. Therefore, the Pitts should have been granted the easement by necessity, and the easement should remain binding upon Foster.

II. An easement by necessity should have been granted because without it, an improper restriction on alienation exists.
¶ 14. The effect of the lower court's judgment would be to require successive owners of the Pitts' tract of land to seek access to the land by litigation, by negotiation with a third party for a rightof-way, or by paying for a permit from the Forest Service and risking revocation of that permit. As the Pitts explain in their brief, this requirement "has an obvious, chilling effect" on the prospective sale of the property because a landlocked parcel of property has no utility without access. Common law and public policy proscribe restraints on alienation. Thus, we acknowledge the validity of this assertion of error in reversing the lower court's judgment.
¶ 15. Upon remand, the Chancellor is directed to establish the location and dimensions of this easement by necessity.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF PERRY COUNTY IS REVERSED AND THE CASE REMANDED TO ALLOW THE CHANCELLOR TO ESTABLISH THE LOCATION AND DIMENSIONS OF THE EASEMENT. ALL COSTS ARE TAXED TO THE APPELLEE.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] In Broadhead, the appellant asserted that Miss.Code Ann., § 65-7-201, provides a remedy that requires the party seeking access to compensate the owner of the servient estate for the fair value of the land taken and for damage to the servient tenement. The supreme court responded to this assertion by holding that the procedure for establishing a private right-of-way provided in § 65-7-201 "is not a complete and adequate alternative remedy to the recognition and enforcement of an easement of way by necessity" and that the statute did not prohibit the chancery court's grant of appropriate equitable relief. Broadhead, 611 So.2d at 955 (Miss.1992).