874 So.2d 1010 (2004)
Dianna SIMCOX, Appellant,
v.
Robert D. HUNT, Appellee.
No. 2003-CA-00227-COA.
Court of Appeals of Mississippi.
June 1, 2004.
*1012 Becky Mae Allen Farrell, attorney for appellant.
Harry M. Yoste, Gulfport, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Robert and Diane Hunt commenced this action by filing a complaint against Dianna Simcox. The complaint asserted claims to quiet title, to establish a trespass through the construction of the brick structure, for a permanent injunction against future trespass, to establish an easement to allow Simcox access to her property, and for an unspecified amount of damages and attorney's fees for intentional trespass on their property. Simcox counterclaimed and asserted claims for adverse possession, trespass, slander of title, fraud and monetary damage.
¶ 2. The property in dispute was a fiftyfoot strip of land, which was adjacent to Simcox's western boundary, that was owned by the Hunts. The dispute arose after Simcox built a brick entrance structure that encroached on the disputed property. The Hunts claimed ownership and sought to remove Simcox from possession of the disputed property. Simcox counterclaimed that she was entitled to an easement over the property or, in the alternative, acquired the property through adverse possession. The chancellor granted the Hunt's claim to quiet title of the disputed property, denied Simcox's counterclaim for ownership, and granted Simcox an easement for ingress and egress over the Hunts' property. As to the claim of ownership, we affirm. As to the claim of an easement, we reverse, render and remand for the lower court to enter an order with a metes and bounds description granting Simcox an easement over the disputed property.

FACTS
¶ 3. On September 19, 1986, Simcox purchased a one acre tract of land from Montebella Development Corporation, a corporation solely owned by the Hunts. Simcox's property consisted of one acre out of a ninety-acre tract originally owned by Montebella. The remaining acreage was subsequently conveyed to the Hunts.
*1013 ¶ 4. In 1998, Simcox began construction of a brick structure at the entrance to her property. The structure was located on Simcox's western boundary line. This dispute arose when the Hunts questioned whether the brick structure encroached onto their property, i.e., the disputed strip of land.
¶ 5. The documentary evidence submitted at trial included the various warranty deeds that evidenced the conveyances from Montebella to Simcox and the Hunts, correspondence between Montebella, the Hunts and Simcox, several surveys prepared by Edward Jermyn (a registered land surveyor), photographs of the property, and other related documents.
¶ 6. The warranty deeds clearly indicate common ownership of the property by Montabella. The warranty deed conveying the property from Montabella to Simcox did not contain an easement or other means for access to the property. However, by letter dated July 31, 1986, Robert Hunt, as president of Montabella, provided Simcox with a letter that read:
Please let this letter serve as Montebella Development Corporation's notification of intention to allow Dianna [Simcox] access to her property (description attached) by way of an existing extension road from Gramard Lane (see attached illustration).
This easement and allowance shall be incorporated within her deed upon closing of sale of said property.
She shall have rights to ingress and egress of this easement at all times.
¶ 7. Attached to the letter was a copy of Jermyn's August 23, 1985 survey of the property. This survey platted and described the one acre parcel that was conveyed to Simcox. The survey also platted a fifty-foot "proposed road," the east side of which abutted the western boundary of Simcox's property. The survey included a reference to a twenty-foot wide "existing drive," which intersected Simcox's property at the northern end of her western boundary. The only "description" included in the survey was a metes and bounds description of the one acre parcel conveyed to Simcox.
¶ 8. No instrument granting an easement over the "existing drive" or the "proposed road" was ever recorded. The Hunts admitted that they, through Montabella, had proposed to build a paved road over the fifty-foot "proposed road."
¶ 9. At trial, the Hunts introduced another survey prepared by Jermyn. This second survey indicated that Jermyn surveyed the property on December 4, 1998, re-surveyed it on August 29, 2000, and revised the survey on August 14, 2002. The second survey made no reference to the "proposed road" and "existing drive," which had been included in the 1985 survey. Jermyn's testimony did not explain the reason for this omission. Instead, the second survey platted a "gravel drive," which ran from north to south parallel to the Simcox's western boundary. It also platted a turn from the "gravel drive" that intersected Simcox's property near the southern end of her western boundary. The Hunt's also introduced a document, prepared by Jermyn, that provided a metes and bounds description of the "gravel drive."
¶ 10. The discrepancy between Jermyn's two surveys is the genesis of this dispute. The Hunt's asked the court to disregard the 1985 survey, confirm their ownership by quieting title, and grant Simcox only an access easement based on the second survey. Simcox asked the court to rely on the 1985 survey to declare her the owner of the disputed property or, in the alternative, grant her an easement over the "proposed road."
*1014 ¶ 11. At trial, the Hunts agreed that Simcox was entitled to an easement for ingress and egress over an existing gravel road that was situated on the Hunts' property. However, the Hunts argued that Simcox was entitled only to an easement over the existing gravel road, and Simcox argued that she was entitled to ownership or, in the alternative, an easement over the portion of the fifty-foot "proposed road" from the existing gravel road to the western boundary of her property.
¶ 12. Relevant to this appeal, the chancellor's judgment included the following findings of fact and conclusions of law:
The Court is forced to find that neither of [Simcox's] theories have been sufficiently proven to show Ms. Simcox has an ownership interest in the disputed property. The [Hunts] do admit to her having a perpetual, non-exclusive easement for ingress and egress which will run with the land. The Hunts have also agreed to allow the Simcoxes a permissive use of the property upon which the brick walls encroach. The Hunts should be equitably and judicially estopped from withdrawing permissive use unless or until the encroachment interferes with the actual development and improvement of the proposed road, if ever. However, the use will remain permissive, and shall not ripen into an ownership interest.
It is therefore, ordered and adjudged that Dianna Simcox has failed to prove her Counterclaim of an ownership interest in the disputed property, and her Counterclaim is therefore denied and dismissed. The claim of the Hunts for quieting their title consistent with their survey and the deed recorded in the land records of Harrison County should be and hereby is granted.
It is therefore, ordered and adjudged that the metes and bounds as deeded to Dianna Simcox and as recorded in the land records of Harrison County shall remain the same but for the addition of the described easement [which was the metes and bounds description of the existing gravel road prepared by Jermyn].
The chancellor's judgment concluded that Jermyn's second survey would control this property dispute. The chancellor granted Simcox a ten foot easement for ingress and egress over the existing gravel road. From this judgment, Simcox appeals.

STANDARD OF REVIEW
¶ 13. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994).

ANALYSIS
I. Whether the chancellor erred in denying Simcox's motion for a directed verdict.
¶ 14. When a defendant moves for a directed verdict at the close of plaintiff's case-in-chief, the lower court must consider the evidence in a light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences that reasonably may be drawn from that evidence. Eselin-Bullock & Assocs. Ins. Agency, Inc. v. National Gen. Ins. Co., 604 So.2d 236, 239-40 (Miss.1992).
¶ 15. Simcox argues that at the close of the Hunt's case-in-chief, all of the evidence indicated that there was a common boundary line between the Hunt property and the Simcox property. Simcox claims that if viewed in the light most favorable to her, this evidence could only lead to one conclusion: Simcox's western boundary line abuts the Hunt's eastern boundary line at *1015 the edge of the road. As such, Simcox claims she is entitled to a directed verdict.
¶ 16. However, in reviewing the grant or denial of a directed verdict, this Court looks at the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence presented at trial. Houston v. York, 755 So.2d 495 (Miss.App.1999). A directed verdict should not be granted unless, on the basis of those facts and inferences, no question of fact remains on which reasonable minds could differ. Id. Here, Simcox was the moving party. As such, her assertion that the evidence should be viewed in the light most favorable to her is incorrect.
¶ 17. In viewing the evidence in the light most favorable to the Hunts, the nonmoving party, a question of fact remained upon which reasonable minds could differ. Therefore, the chancellor did not err in denying Simcox's motion for a directed verdict.
II. Whether the chancellor erred in failing to find that Simcox gained title or an easement to the disputed property through adverse possession.
¶ 18. On this issue, Simcox makes two similar, yet alternative, arguments. Simcox asserts that she should be declared the owner of the disputed property as a result of her purchase or her adverse possession of the property. Alternatively, Simcox argues that she is entitled to a prescriptive easement over the "proposed road," as described in the 1985 survey.
¶ 19. The elements for the acquisition of ownership by adverse possession and the acquisition of an easement acquired through adverse possession, known as a prescriptive easement, are virtually identical. The elements for adverse possession, which results in ownership, require that the property be: under claim of ownership; actual or hostile; open, notorious, and visible; continuous and uninterrupted for a period of ten years; exclusive; and peaceful. Sharp v. White, 749 So.2d 41 (¶¶ 7-8) (Miss.1999); Stallings v. Bailey, 558 So.2d 858, 860 (Miss.1990); Pieper v. Pontiff, 513 So.2d 591, 594 (Miss. 1987); Johnson v. Black, 469 So.2d 88, 90 (Miss.1985). The elements of a prescriptive easement require that the use of the property be: open, notorious and visible; hostile; under a claim of ownership; exclusive; peaceful; and continuous and uninterrupted for ten years. Rawls v. Blakeney, 831 So.2d 1205, 1207(¶ 8) (Miss. Ct.App.2002).
¶ 20. Simcox presented evidence that she, or her family members, maintained the disputed property for the past eleven years. They planted grass, mowed the grass, purchased and spread dirt, and spread gravel on the disputed property. Simcox also claimed that she never received permission from the Hunts to do these things. The Hunts countered with similar evidence of their use of the disputed property.
¶ 21. The chancellor determined that Simcox's activities amounted to the permissive use of the property. Use of property by permission does not evolve into a hostile or adverse use until the permission ends. The time period for obtaining adverse possession or a prescriptive easement, when express or implied permission is previously given, does not begin to run until some form of objection to the use is made by the landowner. Sharp v. White, 749 So.2d 41, 43(¶ 10) (Miss.1999). Here, the Hunts did not object to Simcox's use of the disputed property until the brick entry structure was constructed. Therefore, the continuous *1016 and uninterrupted use of the property did not begin until that time, in 1998.
¶ 22. We find that the chancellor's findings of fact and conclusions of law on this issue were not clearly erroneous. Therefore, we affirm the chancellor's finding that denied Simcox's claims for adverse possession or prescriptive easement on the disputed property.
III. Whether the chancellor erred in denying Simcox's claim for an easement over the fifty-foot "proposed road" and in limiting her permissive use easement to the ten-foot gravel road.
¶ 23. On this issue, we combine several of Simcox's assignments of error.
¶ 24. The chancellor held that "[t]he [Hunts] do admit to [Simcox] having a perpetual, non-exclusive easement for ingress and egress which will run with the land." Simcox challenges the quantity of property included in the easement, i.e. the conclusion that the easement be described as the "existing gravel road," which was ten feet wide, instead of the "proposed road," which was fifty feet wide.
¶ 25. First, Simcox argues that we must reverse the chancellor "to avoid a serious injustice, logic and case law suggest where there is inequitable conduct, equitable estoppel applies." The doctrine of equitable estoppel requires proof of a belief and reliance on some representation, a change of position as a result of the representation, and detriment or prejudice caused by the change of position. Mound Bayou School Dist. v. Cleveland School Dist., 817 So.2d 578, 583(¶ 15) (Miss.2002). The chancellor found that the doctrine of equitable estoppel required the court to grant Simcox a right to permissive use of the ten foot gravel road.
¶ 26. Simcox claims that she relied on the Hunts' representations that there would be a fifty-foot wide paved road abutting her front yard at her western boundary line. The representations were documented in the July 31, 1986 letter that included a copy of and referred to the 1985 survey. Simcox argues that she relied on this representation to place her concrete driveway and her utility poles along what she believed was to become the edge of the "proposed road," which would eventually be a paved road leading to a subdivision. Simcox contends that she purchased her property from Montabella, which was solely owned by the Hunts, and built her home there based on her belief that the proposed road would be constructed.
¶ 27. The Hunt's argue that such a representation was not made. Instead, the Hunts claim ownership of the property that abuts Simcox's western boundary. The Hunts admission that Simcox is entitled to a defined ten-foot easement for ingress and egress, which was granted by the chancellor, contradicts their argument.
¶ 28. The chancellor correctly found that Simcox properly established the elements of equitable estoppel. The evidence clearly and convincingly supports her claim. There was no question that Simcox purchased the right of access to her property. The 1985 survey, provided to Simcox, established that Simcox had reason to believe that her entire western boundary would border and be available for access to her property.
¶ 29. The evidence simply fails to support the chancellor's decision to limit Simcox's easement to the "existing gravel drive." The 1985 survey is undisputed. It makes no reference to the "existing gravel drive" running north and south parallel to Simcox's western boundary, which was platted in Jermyn's second survey and relied on by the chancellor in her judgment. Indeed, the only conclusion that may be drawn from the parties' actions, subsequent *1017 to the 1985 survey, was that the gravel road was constructed and used as part of and consistent with the "proposed road," as indicated in the 1985 survey. The location of the "existing gravel drive" bears absolutely no relationship to the "existing drive" that was indicated on the 1985 survey. Instead, the location of the "existing gravel road" clearly evidences the parties' intent that Simcox would have access to her property along the "proposed road," which abutted her western boundary. No other conclusion can be drawn.
¶ 30. Accordingly, we find that the overwhelming evidence supports Simcox's claim that she bargained for an easement over the entire "proposed road," when she purchased her property, and she changed her position as a result of the representation. The result was that she suffered detriment or prejudice caused by the Hunt's change of position. Mound Bayou School Dist., 817 So.2d at 583 (Miss.2002). Accordingly, we find that the chancellor erred in granting Simcox a right of ingress and egress over only the described ten-foot easement. Simcox established and was entitled to rights of access over the entire "proposed road."
¶ 31. Although the chancellor and this Court agree that Simcox was entitled to relief under the doctrine of equitable estoppel, Simcox also argued that she was entitled to an implied easement over the fifty-foot "proposed road." We agree. We continue with our analysis of this issue because, while the doctrine of equitable estoppel applies, the doctrine of implied easement is likewise, if not more directly, on point.
¶ 32. "It is well established in our law that an easement may be created by grant, implication, or prescription." Screws v. Watson, 755 So.2d 1289, 1293(¶ 7) (Miss.Ct.App.2000) (citing Gulf Park Water Co., Inc. v. First Ocean Springs Dev. Co., 530 So.2d 1325, 1330 (Miss.1988)). "An implied easement must be continuous, apparent, permanent and necessary." Screws, 755 So.2d at 1293(¶ 7). In Leaf River Forest Products, Inc. v. Rowell, 819 So.2d 1281, 1284(¶ 9) (Miss.Ct.App.2002), we held:
Easements arising out of an implication are generally of two types: implied easements essential to the enjoyment of the land and easements by necessity. Bonelli v. Blakemore, 66 Miss. 136, 143, 5 So. 228, 230-31 (1888). See also Cox v. Trustmark Natl. Bank, 733 So.2d 353, 356 (¶¶ 11) (Miss.Ct.App.1999). As a general rule, "an easement by necessity arises by implied grant when a part of a commonly-owned tract of land is severed in such a way that either portion of the property has been rendered inaccessible except by passing over the other portion or by trespassing the lands of another." Taylor v. Hays, 551 So.2d 906, 908 (Miss.1989).
¶ 33. The Hunts' agreement that Simcox was entitled to an easement over the "existing gravel drive" is important to our consideration. The chancellor relied on this admission to grant Simcox an easement over the "existing gravel drive." We review whether the chancellor was correct to limit the easement to ten feet instead of the entire fifty feet of the "proposed road."
¶ 34. Simcox argues that the chancellor should have granted her a fifty-foot wide easement for ingress and egress across the entire western boundary of her property, i.e. the "proposed road." Simcox's argument is based on the principle that a grantor cannot restrict access to landlocked property the grantor conveys. Pitts v. Foster, 743 So.2d 1066 (Miss.Ct. App.1999). In Pitts, this Court held that:
It is well established that an easement by necessity arises by implied grant *1018 when a part of a commonly owned tract of land is severed in such a way that either portion is rendered inaccessible except by passing over the other portion or by trespassing on the lands of another.
¶ 35. Simcox argues that, when she purchased her property from the Hunts, she did not bargain for a limited and defined ten-foot easement for ingress and egress. Rather, she relied on the survey the Hunts provided that clearly indicated that her property would adjoin a fifty-foot wide paved road, giving Simcox unencumbered access across the entire western boundary of her property. The survey presents a twist that has not previously been addressed by Mississippi courts.
¶ 36. We are guided by the following language from an authoritative treatise on this subject:
When an owner of a tract of land subdivides the property in accordance with a map (or plat or plan), a purchaser who purchases a lot within the subdivision also acquires an easement over private streets as laid out on the map....
An easement is implied from the intentions of the parties to the land transactions, as where a purchaser relies on the streets as delineated on the map to enable access from the property to a public road. If this is not shown to be the intention of the parties, an easement will not be implied. A subsequent purchaser is also bound by the implied easement based on the plat of a subdivision. Thus, in a New York case, plaintiff purchased property, which, according to the subdivision map, abutted an undeveloped public thoroughfare. The city never paved the thoroughfare and in 1987 declared the property abandoned for municipal use. The purchaser of the property erected a fence which blocked plaintiff's use of the undeveloped thoroughfare. The court granted an easement by implication based on the subdivision map.
Backman & Thomas, A Practical Guide to Disputes between Adjoining LandownersEasements, § 2.02[3][c] (Matthew Bender 2002) (citing Firsty v. De Thomasis, 177 A.D.2d 839, 576 N.Y.S.2d 454 (3d Dept.1991)).
¶ 37. The 1985 survey created an implied easement. Montabella, who acted through the Hunts, subdivided its property in accordance with a plat that indicated the owner (Simcox) would have access to and use of a "proposed road." Therefore, Simcox purchased and acquired an easement over the "proposed road" as laid out on the plat. The easement is implied from the intentions of the parties to the land transactions, which included Montabella, the Hunts and Simcox, to enable access from the property to a public road. The Hunts, both as a party to the transaction and as a subsequent purchaser, are bound by the implied easement based on the plat.
¶ 38. We find that the chancellor was clearly erroneous in only granting Simcox a limited and defined ten-foot easement for ingress and egress, rather than granting her an easement that would allow her property to be unencumbered along its western boundary line as originally intended by the two parties. Accordingly, we reverse and render granting Simcox an easement over the "proposed road," as indicated on the 1985 survey. We remand to the chancellor for a determination of a metes and bounds description of the easement over the "proposed road."
IV. Whether the chancellor erred in failing to find that Robert Hunt committed trespass to land.
¶ 39. A trespasser is one who enters upon another's property "without license, invitation, or other right, and intrudes *1019 for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than, perhaps, to satisfy his curiosity." Saucier v. Biloxi Reg'l. Med. Ctr., 708 So.2d 1351, 1357 (Miss.1998).
¶ 40. While Simcox may be entitled to an easement across the disputed property, the easement grants Simcox the right to use the disputed property. The ownership of the property remains with the Hunts. To be a trespasser, one must enter upon the property of another. Kelley v. Sportsmen's Speedway, 224 Miss. 632, 644, 80 So.2d 785, 791 (Miss.1955). Because the property in question was owned by the Hunts, Simcox does not have a claim for trespass. Therefore, the chancellor did not err in denying the requested relief.

CONCLUSION
¶ 41. Simcox purchased property from the Hunts with the understanding that a fifty-foot wide road would be constructed giving her unencumbered access across the entire western boundary line of her property. When the Hunts failed to live up to their promise, Simcox was left with property that was encumbered across its entire boundary with the exception of a defined easement for ingress and egress. Finding that the parties originally intended Simcox to have unrestricted access across the entire western boundary line of her property, this court reverses the chancellor's grant of a defined ten-foot easement for ingress and egress. This matter is remanded to the Chancery Court of Harrison County for the entry of an order that includes a complete and correct metes and bounds description of the easement, in accordance with this opinion.
¶ 42. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART; REVERSED, RENDERED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.