966 So.2d 848 (2007)
Tommie CLEVELAND and Jerry Gillis Killen, Appellants
v.
Oscar Kenneth KILLEN, Estelle D. Killen and Jeffrey Kenneth Killen, Appellees.
No. 2006-CA-01021-COA.
Court of Appeals of Mississippi.
October 2, 2007.
*849 Robert M. Logan, Newton, attorney for appellants.
P. Shawn Harris, Forest, attorney for appellees.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. The Chancery Court of Neshoba County found that the use of Kenneth Killen's property by his brother, Jerry Killen, was permissive and not adverse. The court, therefore, denied the adverse possession claim of Jerry and his ex-wife, Tommie Cleveland. Aggrieved, Jerry and Tommie appeal. They assert the following issues: (1) that the chancellor erred in finding the use was permissive, (2) that, if the use was initially permissive, it became adverse with the subsequent construction of a pond on the property, and (3) that Jerry's continued use of the property constitutes adverse possession.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. At issue is a 2.6 acre plot of land, which is located on the south edge of Kenneth *850 Killen's property along the line where it joins the property of his brother, Jerry Killen. Kenneth and Jerry each owned a twenty-acre tract of land located in Neshoba County that their parents deeded to them. Kenneth's tract is located directly north of Jerry's, and there is a straight property line dividing the two parcels. Kenneth received his land in the 1960s, and Jerry received his in 1970.
¶ 4. When Jerry received his land, he sought to build a fence for some cows. Testimony at trial indicated that Jerry approached Kenneth to ask whether he could "tie on" additional fencing to a fence that Kenneth had previously built on his own property. Kenneth had constructed his fence to enclose his own cow. By all accounts this fence was crooked and, although the fence was somewhat parallel to the boundary line, it was not intended to represent the boundary between the properties. Seemingly, none of the parties knew where the exact boundary line was when Jerry built the fence. Kenneth testified, however, that they knew the fence did not represent the line because he had originally built the fence for his milk cow deliberately off the line and on his property.
¶ 5. It is undisputed that Kenneth gave his permission for Jerry to "tie on" to his fence. What this meant was that Jerry and his wife Tommie[1] were able to add fencing to Kenneth's fence that was already constructed. Since Kenneth's fence spanned the middle portion of the property, Jerry began at the corners of Kenneth's fence, and he added fencing eastward and westward to the edges of the property. Combined with Kenneth's portion, this enabled him to fence his cattle without building a fence across the entire property. However, because Kenneth's original fence was built somewhat north of the actual property line, the completed fence separated the 2.6 acres in dispute from the remainder of Kenneth's property.
¶ 6. All the testimony revealed that, until the events preceding trial, there was no conflict among the parties concerning who owned the 2.6 acres. Jerry used the land for gardening and for animals. Kenneth cut timber on the land and built a gate in the fence so he could run his cattle over to Jerry's pond. It was in 1990, some twenty years after Jerry built the original fence, that he built a pond, approximately one-third of which is located on the land owned by Kenneth but on Jerry's side of the fence. Kenneth testified that he made a statement to Jerry when he began to build the pond that, "part of that pond is going to run over on me." According to Kenneth's deposition, he followed this by stating that Jerry needed to do something about it. At trial, however, he denied that he made any objection to Jerry building the pond.
¶ 7. Nevertheless, there was no conflict concerning the building of the pond. The parties did not come to disagree until Tommie divorced Jerry and gained a remainder interest in his twenty acres. Prior to filing suit, Jerry also deeded to Tommie a one-half interest in the property. Tommie eventually filed suit when Kenneth hired a surveyor to mark the property and then built a fence that represented the true property line. The case was pursued by Tommie, and at the time, Jerry was said to be suffering from dementia and did not testify nor make an appearance at trial.

STANDARD OF REVIEW
¶ 8. Upon review, this Court will accept a chancellor's findings of fact as long as they are supported by credible evidence in *851 the record. Cheatham v. Stokes, 760 So.2d 795, 796-97(¶ 6) (Miss.Ct.App.2000). We will not disturb those findings unless they are clearly erroneous or an incorrect legal standard was applied. Id.

ISSUES AND ANALYSIS
I. Whether use of the land was permissive
¶ 9. Tommie first argues that the chancellor erred by finding that her and Jerry's use of the land was permissive. She argues that Kenneth originally agreed to let Jerry build the fence to corral cattle. Since Kenneth originally gave his permission, however, Jerry has raised other animals on the land, planted crops there, built a pond, and maintained it as his own.
¶ 10. Mississippi Code Annotated section 15-1-13 (Rev.2003) provides the following:
Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title. . . .
Furthermore, the supreme court has stated that there are six elements to a claim of adverse possession: "[P]ossession must be (1) under claim of right; (2) actual; (3) open, notorious, and visible; (4) exclusive; (5) continuous and uninterrupted for ten years; and (6) peaceful." Stallings v. Bailey, 558 So.2d 858, 860 (Miss.1990).
¶ 11. "As a general rule, permissive possession of lands, even if long continued, does not confer title in the person in permissive possession until a positive assertion of a right hostile to the owner has been made known to him." Hewlett v. Henderson, 431 So.2d 449, 451 (Miss.1983). If there was never a request or a grant of permission to use the land, however, the use would not be permissive, but would be adverse. Cheatham, 760 So.2d at 798(¶ 14). It is a fact question for a chancellor to determine whether a use is prescriptive or permissive. Sharp v. White, 749 So.2d 41, 43(¶ 8) (Miss.1999).
¶ 12. In this case the dispute is between two brothers. This case did not come to trial until Jerry began to suffer from dementia. "[W]hen a close family relationship is involved, `proof of adverse possession is not ordinarily as easily established as when the parties are strangers.'" Peagler v. Measells, 743 So.2d 389, 391(¶ 12) (Miss.Ct.App.1999) (quoting Georgia Pacific Corp. v. Blalock, 389 So.2d 498, 501 (Miss.1980)).
¶ 13. According to all parties, the two brothers and their families lived side by side for approximately thirty-five years with no disputes between them concerning the 2.6 acres. In the beginning, Jerry asked for Kenneth's permission to build a fence connected to Kenneth's, and Kenneth readily gave permission. Afterwards, they freely gave each other permission to use each other's property. Kenneth built a gate in the fence and brought his cattle across to use the pond during a dry spell. He also cut down some trees located in the disputed area and kept the profit he received from selling the timber. There was no evidence in the record that, after the fence was built, Kenneth objected to Jerry's continued use of the property.
¶ 14. After reviewing the record, we cannot find that the chancellor abused his discretion in finding that permission to use the 2.6 acres was given by Kenneth, thereby rendering Jerry and Tommie's use of the land permissive. This issue is without merit.
*852 II. Whether use of the land became adverse upon construction of the pond
¶ 15. Tommie next argues that, even if the chancellor was correct in finding that the initial use of the land was permissive, it became adverse when Jerry built the pond on it. She claims this "brought home to Kenneth his brother's assertion of a hostile claim."
¶ 16. We have previously stated the rule as to when permissive use may be converted to adverse use:
Use of property by permission does not evolve into a hostile or adverse use until the permission ends. The time period for obtaining adverse possession or a prescriptive easement, when express or implied permission is previously given, does not begin to run until some form of objection to the use is made by the landowner.
Simcox v. Hunt, 874 So.2d 1010, 1015(¶ 21) (Miss.Ct.App.2004) (citing Sharp, 749 So.2d at 43 (¶ 10)). Not only was there no revocation of the permission by Kenneth, but also there was not any positive assertion of a hostile right against him until the events preceding trial. Hewlett, 431 So.2d at 451.
¶ 17. Ultimately, the chancellor found that the building of the pond was not a deviation from the permission granted. While he does note that the pond is the only thing that could come close to a clear act necessary to convert Jerry's use to adverse, he found that its construction was "insufficient in and of itself to change the permissive use to that of adverse, open and hostile. . . ." The chancellor went on to note that Kenneth was aware that the pond would be on his property, but he made no objection to its construction. As in Simcox and Sharp, the chancellor correctly found that the use of the land was permissive and remained permissive absent an act by either party to convert it to adverse use.
¶ 18. The chancellor found that Kenneth initially gave permission for Jerry to use the property, and that nothing in the record revealed that the permission was terminated or withdrawn. We do not find this to be in error. This issue is without merit.
III. Whether use of the property was inconsistent with the permission
¶ 19. In her last point of error, Tommie argues that her and Jerry's use of the property throughout the thirty-five years was inconsistent with the reason for which Kenneth allowed them to use the property. The chancellor, however, found that when Kenneth gave Jerry permission to fence in part of his land, he also gave Jerry permission to use that part of his land. We do not find this to be in error as it seems quite reasonable that a person would use land that he encloses in a fence. To rule that Jerry would not be allowed to use a few acres of land, which was fenced in with his own, would be absurd. Until Jerry's divorce, the brothers lived next to each other, got along well, and cooperated over the use of the disputed land. We find this issue to be similarly without merit.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF NESHOBA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Jerry and Tommie separated in late 2003, and she divorced him in 2004.