# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01559-COA

| | |
|---|---|
| ESTATE OF FRANCES CHRISTINE JONES, BY AND THROUGH THE DULY APPOINTED AND QUALIFIED EXECUTOR SIDNEY JONES; SIDNEY JONES, HEIR AT LAW OF FRANCES CHRISTINE JONES, DECEDENT; LINDRITH JONES THOMPSON, HEIR AT LAW OF FRANCES CHRISTINE JONES, DECEDENT; AND JEFFREY PATRICK JONES, TRUSTEE OF THE LINDRITH JONES THOMPSON TESTAMENTARY TRUST, AN UNFUNDED TESTAMENTARY TRUST ESTABLISHED PURSUANT TO THE LAST WILL AND TESTAMENT OF FRANCES CHRISTINE JONES, DECEASED | APPELLANTS/ CROSS-APPELLEES |

v.

| | |
|---|---|
| IROZENELL PRUITT | APPELLEE/ CROSS-APPELLANT |

AND

| | |
|---|---|
| BOCEE PRUITT | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/31/2014 |
| TRIAL JUDGE: | HON. JANACE HARVEY-GOREE |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | PAMELA L. HANCOCK |
| | GLENN S. SWARTZFAGER |
| ATTORNEYS FOR APPELLEES: | C.R. MONTGOMERY |
| | JOHN PRINCE MARTIN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/26/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Sidney Jones, Jeffrey Patrick Jones, and Lindrith Jones Thompson—hereinafter collectively referred to as the Joneses—brought a claim against Irozenell Pruitt and Bocee Pruitt—hereinafter collectively referred to as the Pruitts, as to the direct appeal—maintaining that they had acquired ownership of two segments of the Pruitts' land through either adverse possession or a prescriptive easement.  The Pruitts responded with  a counterclaim for ejectment, and sought damages for trespass and attorneys' fees.  Chancellor Janace Harvey-Goree of the Chancery Court of Madison County denied the Joneses' claims, and granted the Pruitts' claims for ejectment and attorneys' fees.   The Joneses filed a motion for reconsideration or a new trial, and Chancellor Robert Clark modified the judgment entered by Chancellor Harvey-Goree to eliminate the award of attorneys' fees.  The Joneses have appealed, maintaining that the chancery court erred in (1) denying their claims with respect to the two segments of the Pruitts' land, and (2) excluding expert testimony regarding a survey of one segment of the disputed land, which was prepared by a now-deceased surveyor. Irozenell Pruitt filed a cross-appeal,[1] maintaining that the chancery court erred in denying attorneys' fees.  We affirm, both on direct appeal and cross-appeal.

## FACTS

¶2.     Frances Christine Jones and her husband bought a 206-acre plot of land in Madison County, Mississippi, in the 1950s.  After her husband died in 1968, Frances held title to the land until she died in 1993.  Frances's will specified that the land be left in equal parts to her

---

[1] Bocee did not join Irozenell in the cross-appeal.

three children, Sidney, Jeffrey, and Lindrith.[2]  Although they did not actually hold record title to the land until Frances's estate was closed in 2000, the Joneses frequently used the land for farming and hunting from the 1970s until the 1990s.  The Joneses also allowed others to farm or hunt on the land; at trial, several witnesses testified to having utilized the property in that manner.

¶3.     Bocee Pruitt inherited the property adjacent to the Joneses' property in 1966.  Bocee transferred title to her daughter, Irozenell, on October 4, 2011.  The Pruitts did not live on the land, and visited infrequently.  The Joneses and the Pruitts maintained a peaceful relationship prior to the current dispute.

¶4.     At trial, Sidney testified that he, his family, and their guests have historically accessed the Joneses' property through a 455-foot section of road—hereinafter referred to as the "roadway"—connecting their property to Patrick Road, a public road.  Sidney testified that the road existed at the time his parents bought the property in the 1950s; however, it has since been widened and improved upon.  In or about 1974, Sidney installed a gate at the roadway's entrance at Patrick Road.  Sidney testified that he never asked for anyone's permission to put the gate up, and that no one ever told him that he could not.  Sidney replaced that gate with a larger one approximately twenty years later.  Both the old gate and the new gate had locks on them, and Sidney testified that "[o]nly the people that farm the land and people that had

---

[2] Of note is the fact that Lindrith was given title to the land subject to a trust, of which Jeffrey was made the trustee.  At the time of trial, the record owners of the property were Sidney, Jeffrey, and Jeffrey as the trustee for Lindrith.  However, as this fact has no bearing on the outcome of the trial, we treat Lindrith as if she owned an equal share of the property along with both of her brothers.

3

a key to the gate, mostly family members," could access the roadway. Sidney testified that the only conversation he had with Bocee regarding his placement of a gate on that road occurred five to ten years prior to trial, when Bocee asked him for a key to the new gate. Sidney testified that he told her "that if it was necessary for them to get to their place through those gates, [he] would gladly give her a key, but it was not necessary. They had their own entrance." Sidney further testified that he "always felt like [he] used [the roadway] as [his] own," and that neither Bocee nor Irozenell ever confronted him as to his use of the roadway, prior to October 8, 2011.

¶5.     In contrast, Bocee testified at trial that, before transferring title to Irozenell, she "permitted Sidney Jones to hunt on [her] land, to put up a gate to protect [them], to keep people from just driving in doing whatever they wanted to do," and that "Sidney Jones promised [her] that if [she] would let him continue to use the land, he would be [her] eyes because [she] was out of town and he would watch out. And, if anything illegal occurred out there, he would call [her]." Bocee further testified that she had expressly given Sidney permission to erect the gate on the roadway, after he called her and asked to remove the old gate currently in place and replace it with a new one. However, Bocee testified that although she requested a key to the new gate, Sidney never gave her one. Bocee also testified that Sidney had not kept his promise to keep the roadway maintained, and that it had become overgrown and had developed deep holes as a result of his use of heavy machinery on the road.

¶6.     Both Sidney and Jeffrey testified at trial that their property is landlocked, and that the

4

surrounding properties are owned by multiple neighbors. Jeffrey testified that, to create a new access point, the Joneses would still have to obtain an easement allowing access over one of those properties. Furthermore, building a road pursuant to such a new easement would not be feasible, as a new road would be several miles long and would have to run through plow fields and ditches. In response, Irozenell testified that she never sought to eject the Joneses from the roadway; rather, she wanted them to remove their lock from the gate at the roadway's entrance.

¶7. Additionally, Sidney testified that, since 1994, when he and his family hunted the land, they would camp in an area on the very edge of their property, adjacent to a barbed-wire fence. This barbed-wire fence served as the boundary between the Joneses' property and the Pruitts'. The Joneses built an actual "deer[-]camp structure" in the camp area, which consisted of a 750-square-foot wooden shelter, of sorts. Sidney testified that this construction took place in 2001, while Jeffrey testified that it took place "in late [19]99, 2000, 2001." At some point—although the Joneses and Pruitts differ in their accounts as to when—the structure was enlarged to the extent that it crossed the barbed-wire fence and encroached onto the Pruitts' property. Sidney testified that no one ever gave him permission to cross the barbed-wire fence. However, Irozenell testified that a survey was conducted sometime around 2004, which did not reflect that the deer-camp structure was encroaching onto their property. Irozenell further testified that she visited the land in 2004 during a family reunion, and that the structure was not encroaching onto her land at that time.

¶8. At some point, Bocee asked Sidney to remove the deer-camp structure from her

5

property. Sidney agreed to do so, but ultimately never did. On October 8, 2011, Bocee, Ironezell, and Bocee's sister delivered an eviction notice demanding that Sidney "remove all buildings, materials, and personal property" from the Pruitts' land, and that Sidney "remove [the] lock from the gate entering the property," within the next thirty days. Sidney agreed to comply but requested an extension of the time period so that he could harvest his crop before winter. The Pruitts orally agreed to extend the thirty-day deadline to the beginning of the next year (2012). However, the Joneses ultimately refused to comply and, as stated above, filed their complaint on December 29, 2011. The Pruitts filed their answer and counterclaim.

¶9. The Chancery Court of Madison County, Chancellor Harvey-Goree presiding, conducted a two-day trial. During trial, the Joneses presented Kelly Blake Mendrop, who was admitted as an expert in civil roadway design and construction. Mendrop testified that he had prepared a report using his personal observations of the property, aerial photographs depicting the property, and a survey that had been previously prepared by "Mr. McDonald."[3] Mendrop testified that he used Mr. McDonald's survey as a "basis" for when he looked at the property, but that he "did not review property lines or apparent property lines," nor did he conduct "a detailed review" of the survey. At this point, counsel for the Pruitts objected on the basis that Mr. McDonald was deceased, and that Mendrop was therefore barred from testifying as to "the credibility of the survey and whether or not it was done accurately." The court agreed, finding that Mendrop could not testify as to the truth and veracity of the survey.

---

[3] "Mr. McDonald['s]" full name was not stated at trial; however, in his actual report, Mendrop wrote that the survey was conducted by "T E McDonald."

Mendrop continued his testimony, and counsel for the Joneses asked Mendrop if there were any points on the survey that he verified or identified when he made his personal visit to the property in question. Mendrop began describing the property as it was depicted on the survey, along with his personal observation of the property. At this point, counsel for the Pruitts again objected on the basis that Mendrop could testify from his personal observations of the property, but not in reference to the survey. The survey was not mentioned again during the remainder of Mendrop's testimony.

¶10. On January 5, 2015,[4] the court filed its "Findings of Fact, Conclusions of Law, and Judgment," in which it denied the Joneses' claims for adverse possession or a prescriptive easement as to the roadway and denied the Joneses' claim for adverse possession as to the deer-camp structure. The court instructed the Joneses to remove the lock from the gate on the roadway within thirty days. Further, the court granted the counterclaim for ejectment in part, ordering the Joneses to remove their deer-camp structure from the Pruitts' property by February 1, 2015. The chancery court also granted the Pruitts' request for $12,000 in attorneys' fees. The court denied the Pruitts' claim for damages resulting from the alleged trespass.

¶11. The Joneses filed a motion for reconsideration or, in the alternative, a new trial. Chancellor Robert G. Clark III—who succeeded Chancellor Harvey-Goree following her retirement from the bench—heard the motion and issued an order on September 16, 2015,

---

[4] While the chancery court dated its judgment as December 31, 2014, the judgment was not electronically filed until January 5, 2015, and was not file-stamped until October 16, 2015.

7

in which he upheld all of Chancellor Harvey-Goree's findings except for the award of attorneys' fees to the Pruitts, which he set aside. The Joneses filed a timely notice of appeal on October 14, 2015, and Irozenell filed a notice of cross-appeal on October 19, 2015.

DISCUSSION

¶12. When reviewing a chancellor's judgment, we will apply the following standard of review:

> On appeal, this Court will not reverse a chancery court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings. We only disturb a chancellor's findings of fact where the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. We review questions of law de novo.

*McDowell v. Zion Baptist Church*, 203 So. 3d 676, 681 (¶15) (Miss. Ct. App. 2016) (citation omitted).

> A.    *The Joneses' Appeal*
>
> 1.    *Whether the chancery court erred in denying the Joneses' claims for adverse possession or a prescriptive easement*

¶13. The Joneses argue that the chancery court erred in denying their claims for adverse possession or a prescriptive easement with respect to the 455-foot roadway, and for adverse possession with respect to the deer-camp structure. Mississippi Code Annotated section 15-1-13(1) (Rev. 2012) provides:

> Ten (10) years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten (10) years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title . . . .

8

"The standard and burden of proof to establish a prescriptive easement is the same as a claim for adverse possession of land." *Morris v. W.R. Fairchild Constr. Co.*, 792 So. 2d 282, 284 (¶7) (Miss. Ct. App. 2001) (citation omitted). In either claim, the following elements must be proven: that use of the property is "(1) under a claim of ownership; (2) actual or hostile; (3) open, notorious and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful." *Webb v. Drewrey*, 4 So. 3d 1078, 1082 (¶12) (Miss. Ct. App. 2009). "The person claiming the possession has the burden of proving each of these elements by clear and convincing evidence." *Biddix v. McConnell*, 911 So. 2d 468, 475 (¶18) (Miss. 2005) (citation omitted).

### a. Roadway

¶14. First, the Joneses maintain that the chancery court erred in finding that their use of the 455-foot roadway was permissive—and therefore insufficient to satisfy the hostility requirement of adverse possession or a prescriptive easement—on the basis that the Pruitts had given them verbal permission to use the roadway. In support of their argument, the Joneses cite this Court's decision in *Delancey v. Mallette*, 912 So. 2d 483, 489 (¶17) (Miss. Ct. App. 2005), in which we held that "[w]hen a use of the lands of another for roadway purposes has been open, visible, continuous and unmolested since some point in time anterior to the aged inhabitants of the community, such use will be presumed to have originated adversely." (Quotations omitted). Further, the Joneses argue that "[r]equiring a litigant who is attempting to establish adverse possession or a prescriptive easement to prove that there was no permission for use would be unreasonable. The law typically frowns upon requiring

9

a party to prove a negative averment." *Morris*, 792 So. 2d at 284 (¶9).

¶15.    In response, the Pruitts contend that one of the most basic principles in establishing adverse possession or a prescriptive easement is that the use must be hostile, and that "permissive use by the possessor of the property in question defeats the claim of adverse possession." *Ellison v. Meek*, 820 So. 2d 730, 735 (¶15) (Miss. Ct. App. 2002) (citation omitted).  In support of their argument, the Pruitts cite the testimony at trial that the Pruitts and Joneses had a friendly relationship up until this dispute.  The Pruitts further argue that the fact that Sidney kept the gate locked is consistent with Bocee's testimony at trial that she allowed him to cross into her land as long as he watched out for her property.  Additionally, the Pruitts argue that the fact that Sidney never gave Bocee a key is irrelevant, as Sidney, himself, admitted that the Pruitts did not need a key to access the Joneses' property.

¶16.    This Court held in *Cleveland v. Killen*, 966 So. 2d 848, 851 (¶11) (Miss. Ct. App. 2007):

> As a general rule, permissive possession of lands, even if long continued, does not confer title in the person in permissive possession until a positive assertion of a right hostile to the owner has been made known to him.  If there was never a request or a grant of permission to use the land, however, the use would not be permissive, but would be adverse.  It is a fact question for a chancellor to determine whether a use is prescriptive or permissive.

(Internal citations and quotations omitted).  Furthermore, we reiterated:

> Use of property by permission does not evolve into a hostile or adverse use until the permission ends.  The time period for obtaining adverse possession or a prescriptive easement, when express or implied permission is previously given, does not begin to run until some form of objection to the use is made by the landowner.

*Id.* at 852 (¶15).

10

¶17. Chancellor Harvey-Goree, in her order, found that "all the testimony revealed that the use [of the roadway] was peaceable and permissive." Chancellor Clark made similar findings in his order on the Joneses' motion for reconsideration or for a new trial, and affirmed Chancellor Harvey-Goree's holding with respect to the roadway. We affirm. The record is void of any evidence suggesting that the Joneses' use of the roadway was anything but peaceful. Furthermore, Irozenell even testified at trial that she never sought to bar the Joneses from using the roadway; rather, she merely sought to have them remove their lock from the gate on the roadway. As such, the Joneses have failed to establish that their use of the roadway was hostile, and their claim for adverse possession or a prescriptive easement thereto is unsuccessful.

### b. Deer-Camp Structure

¶18. Second, the Joneses argue that the chancery court erred in finding that they failed to establish that their deer-camp structure had encroached onto the Pruitts' property for the statutorily required ten years. In support of their argument, the Joneses point to Jeffrey's testimony that the deer-camp structure was built sometime between 1999 and 2001, and Sidney's testimony that the structure was built in 2001. The Joneses also point to the testimony of several witnesses who had worked on or farmed the property in the past, who maintained that the deer camp had existed in that area in some capacity since 1994.

¶19. In response, the Pruitts argue that the Joneses provide no exact date for when the deer-camp structure actually began encroaching upon the Pruitts' property, nor did they provide witness testimony as to such. Thus, the Joneses did not prove this statutory requirement by

clear and convincing evidence.  We agree.  The Joneses presented evidence that they began camping in the general vicinity of the future deer-camp structure in 1994, and that the structure itself was built sometime between 1999 and 2001.  However, the Joneses presented no evidence as to when the structure was enlarged to the extent that it began actually encroaching upon the Pruitts' property.  To the contrary, the Pruitts presented evidence that the structure was not encroaching upon their property as late as 2004.  We therefore find no merit to this issue.

> 2. *Whether the chancery court erred in excluding Kelly Blake Mendrop from testifying regarding a survey of the property*

¶20.    The Joneses also argue that the chancery court erred in refusing to allow their expert witness, Kelly Blake Mendrop, to testify at trial regarding a survey that had been previously completed by a surveyor who is now deceased.  "[D]ecisions concerning the relevancy of evidence are in the broad discretion of the trial court." *Terrain Enterprises, Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995).  Appellate courts "will not reverse the trial court's decision unless abuse of that discretion is shown." *Id*. (citation omitted).  "Further, for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Id*. (citation omitted).

¶21.    Both the Joneses and the Pruitts reference *King v. Gale*, 166 So. 3d 589 (Miss. Ct. App. 2015), as controlling authority for this issue.  In *King*, a party seeking a prescriptive easement attempted to elicit testimony from an expert witness regarding a survey prepared by another surveyor.  *Id*. at 592 (¶16).  The party attempted to introduce the survey as a

business record, but the chancellor excluded it as hearsay. *Id*. at 593 (¶17). This Court found that while the chancellor should have admitted the document under the business-records exception to the hearsay rule, any error was harmless since the chancellor was also the finder of fact. *Id*.

¶22. The Joneses argue in their brief that, here, just as in *King*, any evidentiary problems with the survey had to do with the weight and credibility of the evidence as opposed to the admissibility of it. The Joneses do not explicitly argue in their brief that the survey falls under the business-records exception to the hearsay rule; however, they do cite the portion of *King* discussing the business-records exception. The Pruitts, in response, point out that counsel for the Joneses did not seek to introduce the survey as a business record at trial; thus, the Joneses cannot argue that the survey was a business record on appeal. The Pruitts further maintain that, even if the chancellor erred in failing to admit Mendrop's testimony with respect to the survey, such an error was harmless because here, as in *King*, the chancellor was the finder of fact and was qualified to make such a decision. Furthermore, the Pruitts point out that in this matter, the chancellor had an opportunity to visit the site herself.

¶23. We refuse to consider whether the survey falls under the business-records exception to the hearsay rule, as the Joneses made no such argument at trial, and make no competent argument of such on appeal. "A trial judge cannot be put in error on a matter not presented to him." *Conley v. Wright*, 193 So. 3d 663, 666 (¶12) (Miss. Ct. App. 2016) (citation omitted). Further, "it is the duty of counsel to make more than an assertion; they should state reasons for their propositions, and cite authorities in their support." *Minor v. City of*

13

*Indianola*, 909 So. 2d 146, 148 (¶3) (Miss. Ct. App. 2005) (citation omitted).

¶24.    However, we note that even if the chancellor erred in excluding Mendrop's testimony with respect to the survey, such an error was harmless. First, the chancellor was the finder of fact and heard all of the testimony presented; she even had an opportunity to visit the property site. Second, Mendrop stated that, in compiling his summary, he only referred to the survey as a basis to "get [his] bearings on where [he] was" while he was personally inspecting the property. The survey was a minimal aspect of Mendrop's report. As such, we find no merit to this issue.

### B.    *Irozenell's Cross-Appeal*

¶25.    Irozenell asserts one issue on cross-appeal: Whether the chancery court, pursuant to the Joneses' motion for reconsideration or a new trial, erred in vacating its award of attorneys' fees. "[T]he issue of attorney[s'] fees falls within the sound discretion of the trial court." *Ford Motor Co. v. Tennin*, 960 So. 2d 379, 395 (¶57) (Miss. 2007) (citation omitted). Appellate courts "will not reverse the trial court on the question of attorney[s'] fees unless there is a manifest abuse of discretion in making the allowance." *Deer Creek Const. Co. v. Peterson*, 412 So. 2d 1169, 1173 (Miss. 1982). "With the sole exception of punitive damages cases, in the absence of contractual provision or statutory authority therefor, [the Mississippi Supreme Court] has never approved awarding trial expenses and attorney[s'] fees to the successful litigant." *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss. 1986). "Of course, parties may by contract provide that in event of dispute, the losing party must pay the winner attorney[s'] fees." *Id*.

¶26. "Punitive damages may be awarded as punishment for trespass where the proof shows the trespass was willful, grossly negligent or wanton." *R&S Dev., Inc. v. Wilson*, 534 So. 2d 1008, 1013 (Miss. 1988) (citation omitted). "Furthermore, attorneys['] fees may be included as part of an award of punitive damages." *Id.* (citation omitted). The "awarding of punitive damages is not a prerequisite for the awarding of attorney[s'] fees." *Walker v. Murphree*, 722 So. 2d 1277, 1283 (¶25) (Miss. Ct. App. 1998) (citation omitted). The Mississippi Supreme Court held in *Aqua-Culture Technologies, Ltd. v. Holly*, 677 So. 2d 171, 184 (Miss. 1996), that attorneys' fees may be awarded where "punitive damages would have been justified." Ultimately, "the question of whether punitive damages should be awarded depends largely upon the particular circumstances of the case." *Id.*

¶27. Irozenell asserts that Chancellor Clark erred in setting aside Chancellor Harvey-Goree's award of $12,000 in attorneys' fees. In their counterclaim for ejectment, the Pruitts sought punitive damages for trespass that was "willful, grossly negligent, or wanton." The Pruitts also sought recovery of "[r]easonable attorneys' fees." Chancellor Clark, in granting the Joneses' motion for a reconsideration of the award of attorneys' fees, determined that the Pruitts failed to offer any evidence as to the financial ability of the Joneses to pay, in accordance with the requirements of *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), so as to determine the reasonableness of the attorneys' fees requested. We cannot find that this was an abuse of discretion.

¶28. Accordingly, we affirm the chancellor's judgment denying the Joneses' claim, granting the Pruitts' claim for ejectment, and denying Irozenell's claim for attorneys' fees.

¶29.    **ON DIRECT APPEAL: AFFIRMED.  ON CROSS-APPEAL: AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.  BARNES AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**